**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
DAPHNE ADAMS,

                                Plaintiff,

            -against-

YORKTOWN CHILD CARE CENTER and
MARIA RIVERA, *Individually*,

                            Defendants.
---------------------------------------------------------------X

Case No.:

**COMPLAINT**

**PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

        Plaintiff, DAPHNE ADAMS, by and through her attorneys, PHILLIPS & ASSOCIATES

ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this action alleging that Defendants have violated the Americans with

      Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA") and the New York State

      Human Rights Law, New York State Executive Law §§ 296 *et seq.* ("NYSHRL") and seeks

      damages to redress the injuries that she suffered as a result of being discriminated and

      retaliated against on the basis of her actual and/or perceived disability (asthma) and for

      requesting reasonable accommodations related to her disability.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2.      Jurisdiction of this Court is proper under 42 U.S.C. §§ 12101 *et seq*. and 28 U.S.C. §§ 1331

      and 1343.

3.      The Court has supplemental jurisdiction over the claims Plaintiff has brought under state

      laws pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this District pursuant to 28 U.S.C. 1391(b), as the acts complained of

      occurred within the Southern District of New York.

1

5.      By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 10, 2021; (b) receiving a Notice of Right to Sue from the EEOC on or about June 7, 2021; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC.

## PARTIES

6.      At all relevant times, Plaintiff DAPHNE ADAMS ("Plaintiff") is female and a resident of the State of New York.

7.      At all relevant times, upon information and belief, Defendant YORKTOWN CHILD CARE CENTER ("YCCC") was and is a domestic business corporation duly existing pursuant to, and by virtue of, the laws of the State of New York.

8.      Defendant YCCC operates a childcare center with an office located at 2300 Catherine St., Cortlandt Manor, New York 10567.

9.      Upon information and belief, Defendant YCCC employs at least fifteen employees.

10.     At all relevant times, Plaintiff was an employee of Defendant YCCC.

11.     Defendant MARIA RIVERA ("RIVERA") possesses operational control over, has an ownership interest in Defendant YCCC, and controls significant functions of Defendant YCCC.

12.     In addition, Defendant RIVERA was a supervisor of Plaintiff and had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

13.     Defendants YCCC and RIVERA are collectively referred to herein as "Defendants."

## MATERIAL FACTS

14.     On or about August 31, 2020, Plaintiff began working as a "Assistant Teacher" at Defendants' childcare center.

15. Plaintiff worked from about 10:30 a.m. to 6:00 p.m. Monday to Friday, earning approximately $13 per hour.

16. At all relevant times, Plaintiff was qualified for her position.

17. From the beginning of her employment at Defendants, Plaintiff had informed her employers that she had asthma through her hiring documentation as well as verbally.

18. Starting in or around October 5, 2020, Plaintiff suffered from asthmatic bronchitis, and had to be out of work for about a week because Defendants required her to produce negative COVID-19 tests.

19. On or about October 14, 2020, Plaintiff suffered an asthma attack and text messaged Defendant RIVERA to inform her that she had had an asthma attack and would be late to work because she was getting a nebulizer treatment for her asthma.

20. On or about October 15, 2020, Plaintiff text messaged Defendant RIVERA to let her know that she was not feeling well as her usual asthma treatments were not being effective and that she had to go to the doctor.

21. Defendant RIVERA appeared unsympathetic to Plaintiff's health condition and responded that she **"really need[ed]" Plaintiff to try to go to work that day.**

22. Plaintiff responded that the previous week she had suffered from bronchitis on top of her asthma, and that she had to get a chest x-ray to see if she had pneumonia as she was not feeling better and it was difficult to even carry a conversation.

23. **Defendant RIVERA then stated that Plaintiff was "putting [her] in a position where [she] [could not] effectively run [her] center because [Plaintiff] [had] been out."**

24. Plaintiff further explained that she felt like her chest was being crushed, that it hurt, and that it was hard to breathe. Plaintiff also disclosed that she had started taking Prednisone the previous day to treat her asthma.

3

25.     On or about October 16, 2020, Plaintiff text messaged Defendant RIVERA that her asthma symptoms were getting worse and that it was hard for her to breathe.

26.     On or about October 19, 2020, Plaintiff text messaged Defendant RIVERA that she was still not feeling better and that she was waiting for her doctor to help her schedule a medical appointment with a pulmonologist for her asthma. Plaintiff was once again effectively asking for a reasonable accommodation in the form of taking time off to care for her disability.

27.     Later that same day, Plaintiff text messaged Defendant RIVERA to inform her that she had spent the day in the Emergency Room due to her asthma, that she was given medicine to help her breathe better, and that she may be able to return to work in two days.

28.     On or about October 24, 2020, Plaintiff informed Defendant RIVERA that she had to meet with a cardiologist on October 26, 2020, because there was an issue with her heart due to her medications and that she could not miss her appointment. Plaintiff requested to leave around 3:00 p.m. on that day in order to make her doctor's appointment. Plaintiff also asked Defendant RIVERA if she preferred that Plaintiff went to work on October 27, 2020 instead of October 26, 2020, as she believed that she could work a full day on the 27th. Plaintiff was again effectively asking for a reasonable accommodation.

29.     Defendant RIVERA told Plaintiff that she could come in to work on October 27, 2020.

30.     On or about October 24, 2020, Plaintiff sent Defendant RIVERA a copy of a doctor's note excusing Plaintiff from work until October 26, 2020.

31.     As per the doctor's note Plaintiff returned to work on or about October 27, 2020. That same day, Plaintiff informed Defendant RIVERA that she needed to leave early from work on October 29, 2020 because she needed to undergo tests of her vital signs in relation to her

asthma. Plaintiff was yet again effectively asking for a reasonable accommodation to attend her doctor's appointment.

32.    On or about October 28, 2020, Plaintiff informed Defendant RIVERA that she would be running a little late because she needed to get an emergency nebulizer treatment for her asthma, which she realized she needed when she was getting ready for work.

33.    On or about November 5, 2020, Plaintiff sent Defendant RIVERA a copy of her doctor's note, which stated that Plaintiff had asthma and that she was unable to lift more than 20 lbs. of weight at work due to her asthma. Plaintiff was effectively asking for a reasonable accommodation in relation to her disability.

34.    Upon information and belief, another employee of Defendants was granted a similar reasonable accommodation in relation to their own disability, so this would not have been an undue burden for Defendants.

35.    Plaintiff worked her scheduled shifts until she suffered another asthma attack on or about November 9, 2020, while at work. Plaintiff informed Defendant RIVERA that the asthma attack was "really bad," that even going to get her inhaler made it almost impossible for her to breathe, and that she would not be able to continue her shift. Plaintiff was effectively asking for a reasonable accommodation in the form of taking time off to care for her disability.

36.    Upon information and belief, other non-disabled employees leave their shifts early at times too without consequence.

37.    Later that same day, Plaintiff had still not fully recovered from her asthma attack and informed Defendant RIVERA that she could not go to work the following day.

**38.    Defendant RIVERA responded with a blatantly discriminatory and ableist text message, telling Plaintiff that she needed to really get her health "under control" and**

**complaining for the days that Plaintiff had taken off to care for her disability. Defendant RIVERA also wrote that she had already filled Plaintiff's position, effectively terminating Plaintiff.**

39. Plaintiff responded that she needed to take the day off of work the following day because her new medication would not be available to her in time for her to use it and be able to breathe normally in order to return to work. Plaintiff volunteered to reach out to the substitute teachers to cover for her shift.

40. However, Defendant RIVERA reiterated that she had already filled Plaintiff's position and that Plaintiff was no longer working for Defendant YCCC.

41. Defendants did not make any attempt to engage in any type of interactive dialogue concerning Plaintiff's requested accommodations.

42. Plaintiff realized that Defendants would not attempt to accommodate Plaintiff's disability and had terminated her so that they would not have to provide her with any further reasonable accommodations.

43. Defendants failed to engage in the interactive process and cooperative dialogue.

44. Defendants terminated Plaintiff because of her actual and/or perceived disabilities (asthma). But for Plaintiff's disability, Plaintiff would not have been discriminated against.

45. Defendants terminated Plaintiff because she requested and/or needed reasonable accommodations.

46. Defendants terminated Plaintiff so that they would not have to grant her any further accommodations on the basis of her disability.

47. Defendant YCCC is subject to the ADA.

48. At all relevant times, Plaintiff was an individual with one or more disabilities within the meaning of the ADA (asthma).

49.     Defendant YCCC perceived Plaintiff to be disabled.

50.     At all relevant times, Plaintiff was and is a qualified individual who can perform the essential functions of his employment with or without a reasonable accommodation as defined by § 12111(8) of the ADA.

51.     At all times relevant, Plaintiff's disabilities were physical impairments which substantially limit one or more major life activities within the meaning of § 12102(1)(A) of the ADA, including, but not limited to her respiratory function.

52.     The above are just some of the ways Defendant YCCC discriminated and retaliated against Plaintiff while employing her.

53.     As a result of Defendants' actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

54.     As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered and continues to suffer severe emotional distress and physical ailments.

55.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

56.     As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

57.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against both Defendants.

**AS A FIRST CAUSE OF ACTION**
**<u>DISCRIMINATION UNDER THE ADA</u>**

58.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

59.    Section 12112 of the ADA, titled "Discrimination," provides:

(a) General rule. - No covered entity shall discriminate against a qualified
individual on the basis of disability in regard to job application procedures,
the hiring, advancement, or discharge of employees, employee
compensation, job training, and other terms, conditions, and privileges of
employment.

60.    Defendants engaged in unlawful discriminatory practices by discriminating against

Plaintiff because of her disabilities, whether actual and/or perceived.

**AS A SECOND CAUSE OF ACTION**
**RETALIATION UNDER THE ADA**

61.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

62.    The ADA prohibits retaliation, interference, coercion, or intimidation.

63.    Section 12203 of the ADA provides:

a)    Retaliation. No person shall discriminate against any individual because such
individual has opposed any act or practice made unlawful by this chapter or because such
individual made a charge, testified, assisted, or participated in any manner in an
investigation, proceeding, or hearing under this chapter.

b)    Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate,
threaten, or interfere with any individual in the exercise or enjoyment of, or on account of
his or her having exercised or enjoyed, or on account of his or her having aided or
encouraged any other individual in the exercise or enjoyment of, any right granted or
protected by this chapter.

64.    Defendants violated this section as set forth herein.

**AS A THIRD CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYSHRL**

65.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

8

66.    The New York State Executive Law § 296(1)(a) provides that,

> It shall be an unlawful discriminatory practice: For an employer …
> because of an individual's age, race, creed, color, national origin,
> sexual orientation, military status, sex, **disability**, predisposing
> genetic characteristics, marital status, or domestic violence victim
> status, to refuse to hire or employ or to bar or to discharge from
> employment such individual or to discriminate against such
> individual in compensation or in terms, conditions or privileges of
> employment.

67.    Defendants engaged in unlawful discriminatory practices in violation of the NYSHRL by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her disabilities, whether actual and/or perceived.

### AS A FOURTH CAUSE OF ACTION
### RETALIATION UNDER THE NYSHRL

68.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

69.    New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because she has opposed any practices forbidden under this article."

70.    Defendant violated this section as set forth herein.

### AS A FIFTH CAUSE OF ACTION
### AIDING AND ABETTING UNDER THE NYSHRL
### (Against Defendant RIVERA)

71.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

72.    New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

73.     Defendant RIVERA engaged in unlawful discriminatory practices in violation of New York State Executive Law §296(6) as set forth herein.

74.     Defendant RIVERA has aided, abetted, incited, compelled, and/or coerced acts forbidden under the NYSHRL §296(6).

75.     Specifically, Defendant RIVERA has aided, abetted, incited, compelled, and/or coerced discrimination against Plaintiff based on Plaintiff's disability and, therefore, is individually liable for the unlawful discrimination complained of herein.

**JURY DEMAND**

76.     Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.     Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA and the NYSHRL in that Defendants discriminated against Plaintiff on the basis of her disability, whether actual and/or perceived and retaliated against her for requesting reasonable accommodations;

B.     Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.     Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.     Awarding Plaintiff punitive damages;

E.     Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
       June 24, 2021

**PHILLIPS & ASSOCIATES,**
**Attorneys at Law, PLLC**

By:        _____
         Brittany A. Stevens, Esq.
         Morgan Mickelsen, Esq.
         *Attorneys for Plaintiff*
         45 Broadway, Suite 430
         New York, New York 10006
         T: (212) 248-7431
         F: (212) 901 - 2107
         bstevens@tpglaws.com
         mmickelsen@tpglaws.com